UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA DeGROOT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:14CV00045 ACL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Cynthia DeGroot requested supplemental security income based on a number of physical and mental conditions. An examination of DeGroot's medical and mental health records support that she has received treatment for fibromyalgia, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, hepatitis C, stage II liver disease, thyroid issues, social anxiety, and depression. DeGroot brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act.

An Administrative Law Judge (ALJ) found that, despite DeGroot's multiple severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform light work with additional standing and walking limitations. A vocational expert testified that the job numbers would be somewhat eroded due to said limitations, however, De Groot would be able to perform the requirements of occupations such as hand packer and production worker assembler,

which exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

On August 10, 2011, DeGroot filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), claiming that she became unable to work due to her disabling condition on October 1, 2008.[1] (Tr. 126-32, 133-39). DeGroot's claims were denied initially. (Tr. 64-65, 73-77.) Following an administrative hearing, DeGroot's claims were denied in a written opinion by an ALJ, dated April 18, 2013. (Tr. 9-24.) DeGroot then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA) (Tr. 8), which was denied on March 12, 2014 (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, DeGroot first claims that the ALJ erred when she "improperly characterized the thyroid conditions of the Plaintiff as non-severe." (Doc. 18 at 46.) DeGroot next argues that the ALJ erred by failing to "properly consider the subjective testimony of the Plaintiff discrediting her testimony with a flawed and incomplete credibility analysis." *Id.* at 46.

## II. Applicable Law

**II.A.  Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

---

[1]DeGroot subsequently amended her alleged onset of disability date to July 10, 2009. (Tr. 12.)

which exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

On August 10, 2011, DeGroot filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), claiming that she became unable to work due to her disabling condition on October 1, 2008.[1] (Tr. 126-32, 133-39). DeGroot's claims were denied initially. (Tr. 64-65, 73-77.) Following an administrative hearing, DeGroot's claims were denied in a written opinion by an ALJ, dated April 18, 2013. (Tr. 9-24.) DeGroot then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA) (Tr. 8), which was denied on March 12, 2014 (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, DeGroot first claims that the ALJ erred when she "improperly characterized the thyroid conditions of the Plaintiff as non-severe." (Doc. 18 at 46.) DeGroot next argues that the ALJ erred by failing to "properly consider the subjective testimony of the Plaintiff discrediting her testimony with a flawed and incomplete credibility analysis." *Id.* at 46.

## II. Applicable Law

**II.A.  Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

---

[1]DeGroot subsequently amended her alleged onset of disability date to July 10, 2009. (Tr. 12.)

(1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**II.B.  Determination of Disability**

To be eligible for DIB and SSI under the Social Security Act, a plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d at 1217; *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987); *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998). First, it is determined whether the

claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. *See* 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. *See* 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." *Id.* Age, education and work experience of a claimant are not considered in making the "severity" determination. *See id.*

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. *See* 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which requires an inquiry regarding whether the impairment prevents the claimant from performing his or her past work. *See* 20 C.F.R. § 404.1520 (e), 416.920 (e).

If the claimant is able to perform the previous work, in consideration of the claimant's RFC and the physical and mental demands of the past work, the claimant is not disabled. *See id.* If the claimant cannot perform her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. *See* 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if she is not able to perform any other work. *See id.* Throughout this process, the burden remains upon the claimant

until she adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity (RFC) assessment. *See* 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

### III. The ALJ's Determination

The ALJ found that DeGroot met the insured status requirements of the Social Security Act through March 31, 2013. (Tr. 14.) She also found that DeGroot has not engaged in substantial gainful activity since July 10, 2009, the amended alleged onset date. *Id*.

In addition, the ALJ concluded that DeGroot had several severe impairments, including: fibromyalgia, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, hepatitis C, stage II liver disease, social anxiety, and depression; but no "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 14-15.)

As to DeGroot's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant would be limited to walking or standing for 4 hours, in an 8-hour day. She can occasionally crawl or climb ladders, ropes, and scaffolds. She can frequently perform all remaining postural activities. She can perform frequent bilateral overhead reaching. She can perform frequent bilateral gross and fine manipulation. She would require an avoidance of concentrated exposure to excessive vibration, concentrated chemicals, or concentrated hazards. She would be limited to simple, routine, repetitive tasks and incidental contact with the public.

(Tr. 16.)

The ALJ found that DeGroot's allegations of total disability were not fully credible. (Tr. 18-19.) Specifically, the ALJ stated that DeGroot's "wide range of reported activities from her testimony and function reports, the reports of resolved symptoms after neck and carpal tunnel surgeries, and the consistent reports of stable mental health symptoms, also render the claimant's allegations of disabling symptoms and limitations not fully credible." *Id.*

The ALJ further found that DeGroot is unable to perform any past relevant work. (Tr. 19.)

She also concluded, based on vocational expert testimony, that there are jobs that exist in significant numbers in the national economy that DeGroot can perform. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on August 10, 2011, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on August 10, 2011, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 20.)

## IV. Discussion

As noted above, DeGroot raises two claims in this action for judicial review of the ALJ's decision denying benefits. The undersigned will discuss DeGroot's claims in turn.

### IV.A. Severity Determination

DeGroot first argues that the ALJ committed reversible error when she found DeGroot's thyroid condition was non-severe and further erred by failing to include limitations caused by this impairment in the RFC assessment. DeGroot also contends that the ALJ's assessment of her thyroid condition as "thyroiditis"[2] is a mischaracterization of her thyroid problems.

Defendant argues that DeGroot's thyroid condition resolved with surgery and medication, and that there is no evidence that it resulted in work-related functional limitation.

In determining the severity of DeGroot's thyroid condition, the ALJ found as follows:

> The record contains a diagnosis of history of thyroiditis. However, the evidence does not support that this condition causes more than minimal functional limitations. Further, the record does not demonstrate any secondary issues or complications which would reasonably support functional limitations. Accordingly, this impairment is not severe.

(Tr. 14.)

---

[2]Inflammation of the thyroid gland. *Stedman's Medical Dictionary*, 1988 (28th Ed. 2006).

To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities. See 20 C.F.R §§ 404.1520(c), 416.920(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.152l(b); 416.92l(b). Although DeGroot has "the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities, . . . the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

DeGroot's thyroid issues began in December 2010. DeGroot saw Geetha Komatireddy, M.S., at Ozark Rheumatology for follow-up regarding fibromyalgia on December 23, 2010. (Tr. 352-54.) Laboratory testing revealed a thyroid stimulating hormone ("TSH") level[3] of almost 0, which Dr. Komatireddy indicated was probably indicative of hyperthyroidism.[4] (Tr. 352.) Dr. Komatireddy referred DeGroot to an endocrinologist for evaluation of her "abnormal thyroid function." (Tr. 354.)

DeGroot saw Phenu V. Zachariah, D.O., at Cape Diabetes and Endocrinology, on

---

[3] A diagnostic test to differentiate primary and secondary hypothyroidism. *Stedman's* at 1989. Normal values are between 0.34 and 4.82 microunits per milliliter. (Tr. 359.)
[4] An abnormality of the thyroid gland in which secretion of thyroid hormone is unusually increased and no longer under regulatory control of hypothalamic-pituitary centers; characterized by a hypermetabolic state, usually with weight loss, and tremulousness; may progress to severe weakness and wasting. *Stedman's* at 928.

December 29, 2010. (Tr. 251-52.) Dr. Zachariah indicated that DeGroot had been having some dysphagia[5] due to esophageal issues, some ongoing dysphonia,[6] weight gain, heat and cold intolerance, and fatigue. (Tr. 251.) Dr. Zachariah diagnosed DeGroot with abnormal thyroid function among other things. (Tr. 252.) Dr. Zachariah indicated that DeGroot likely had thyroiditis, but additional laboratory testing would be performed. *Id.* DeGroot saw Dr. Zachariah on February 28, 2011, at which time she reported some dysphagia associated with sinusitis issues over the past month. (Tr. 246.) Upon examination, Dr. Zachariah noted some hand tremors, which DeGroot reported occurred intermittently when her anxiety seemed to be more out of control. *Id.* Dr. Zachariah diagnosed DeGroot with thyroiditis and abnormal thyroid function among other things. (Tr. 246-47.)

DeGroot underwent a thyroid uptake scan on March 9, 2011, which revealed a low thyroid uptake and mildly asymmetric thyroid lobes. (Tr. 285.)

DeGroot presented to Dr. Zachariah on August 29, 2011, at which time she reported occasional fever with associated chills, chronic fatigue, heat and cold intolerance, and right hand tremors. (Tr. 958.) Dr. Zachariah concluded that DeGroot likely suffered from a condition other than thyroiditis, potentially secondary hypothyroidism. (Tr. 958-59.) He noted that a thyroid nodule was palpated on physical exam, and that an ultrasound would be performed to confirm. (Tr. 959.) On November 7, 2011, Dr. Zachariah performed an ultrasound of the thyroid, which revealed a multinodular goiter.[7] (Tr. 956.) On January 10, 2012, DeGroot reported dysphagia, dysphonia, fatigue, and chronic heat intolerance. (Tr. 954.) Dr. Zachariah diagnosed DeGroot with thyroiditis as her TFTs were normal, and multinodular goiter with compression symptoms.

---

[5]Difficulty in swallowing. *Stedman's* at 599.
[6]Altered voice production. *Stedman's* at 599.
[7]An enlargement of the thyroid gland, appearing with a number of separate nodules in the gland. *See Stedman's* at 824.

(Tr. 954-55.)  He referred DeGroot to an ENT for evaluation and potentially a surgical intervention.  (Tr. 955.)  Dr. Zachariah recommended surgery due to the size of the nodules.  *Id.*

DeGroot presented to Judy Pedigo, FNP, on February 17, 2012, with complaints of tremors.  (Tr. 496.)  Ms. Pedigo indicated that the tremors could possibly be related to DeGroot's thyroid.  *Id.*

DeGroot saw D. Curtis Coonce, M.D., at SEMO Otolaryngology, on February 14, 2012, for evaluation of her thyroid nodules.  (Tr. 658-60.)  DeGroot complained of dysphagia, nausea, headaches, seizures of unknown type, and excessive fatigue.  (Tr. 569.)  Dr. Coonce noted multinodular goiter upon examination.  (Tr. 660.)  He recommended a total thyroidectomy based on her family history of thyroid cancer.  *Id.*  On February 20, 2012, DeGroot underwent a total thyroidectomy performed by Dr. Coonce.  (Tr. 661-62.)

DeGroot saw Dr. Zachariah on March 15, 2012, at which time she reported that her dysphagia issue had much improved since surgery.  (Tr. 952.)  The pathology noted no evidence of malignancy.  *Id.*  DeGroot reported some nausea and hand tremors, although these symptoms improved somewhat since surgery.  *Id.*  DeGroot continued to experience headaches and fatigue.  *Id.*  Dr. Zachariah assessed DeGroot's thyroiditis, hypothyroidism secondary to total thyroidectomy, abnormal TFTs, and multinodular goiter status post total thyroidectomy.  (Tr. 952-53.)  Dr. Zachariah prescribed Levoxyl.[8]  (Tr. 953.)

On May 15, 2012, DeGroot saw Ms. Pedigo with complaints of tremors.  (Tr. 495.)  Ms. Pedigo indicated that she would refer DeGroot to a neurologist.  *Id.*  She stated that the tremors "seem to be intentional tremor and I am not sure that it is still not related to her thyroid but I think she needs someone in that specialty to investigate."  *Id.*

---

[8] Levoxyl is indicated as replacement or supplemental therapy in hypothyroidism. *See Physician's Desk Reference ("PDR")*, 1780 (63rd Ed. 2009).

On May 17, 2012, DeGroot reported that her fatigue had improved, but her hand tremors were still persistent and unchanged since surgery. (Tr. 950.) Dr. Zachariah noted bilateral hand tremors upon examination. *Id.* Dr. Zachariah's assessment was that DeGroot's thyroiditis had resolved following a total thyroidectomy; that she had hypothyroidism secondary to total thyroidectomy; her thyroid function was normal; and that the tremors were not attributable to a thyroid hormone issue. (Tr. 950-51.) Dr. Zachariah referred DeGroot to a neurologist for investigation of her tremors. (Tr. 951.)

On May 31, 2012, DeGroot saw neurologist R.L. Stahly, D.O. for evaluation of her tremors. (Tr. 504-06.) Dr. Stahly indicated that DeGroot's tremors had been "mildly improved" following her thyroidectomy, although she still experienced trouble with handwriting as well as involuntary movements and tremors, especially at rest. (Tr. 504.) Dr. Stahly stated that the resting component that DeGroot described may reflect underlying secondary Parkinsonian symptoms due to Abilify.[9] *Id.* DeGroot's father and paternal grandfather had histories of tremors. (Tr. 505.) Dr. Stahly diagnosed DeGroot with familial tremor disorder, possible schizoaffective disorder[10] with hallucinations, degenerative disc disease, hypothyroidism, and fibromyalgia. (Tr. 504.) Dr. Stahly prescribed low-dose Mysoline[11] for DeGroot's familial tremor. *Id.* He noted that DeGroot appeared to be overmedicated related to her treatment of fibromyalgia and possible schizoaffective disorder, and recommended that she talk with her psychiatrist regarding discontinuing Abilify if possible. *Id.* Dr. Stahly also scheduled an MRI of

---

[9]Abilify is indicated for the treatment of schizophrenia, manic or mixed episodes of bipolar disorder, and major depressive disorder. *PDR* at 881.
[10]An illness manifested by an enduring major depressive, manic, or mixed episode along with delusions, hallucinations, disorganized speech and behavior, and negative symptoms of schizophrenia. *Stedman's* at 570.
[11]Mysoline is an anticonvulsant drug indicated for the treatment of seizures. *See* WebMD, http://www.webmd.com/drugs (last visited September 11, 2015).

the brain. (Tr. 506.)

DeGroot's psychiatrist, Talia Haiderzad, M.D., discontinued the Abilify on June 29, 2012. (Tr. 904.)

DeGroot presented to Dr. Zachariah on July 17, 2012, at which time she reported nausea, palpitations, fevers, chills, tremors, fatigue, and headaches. (Tr. 948.) DeGroot attributed the fevers and chills to hepatitis C. *Id.* Dr. Zachariah diagnosed DeGroot with hypothyroidism secondary to total thyroidectomy, multinodular goiter status post-surgery, and tremors. (Tr. 948-49.) He adjusted DeGroot's dosage of thyroid medication based on her weight loss. (Tr. 949.)

DeGroot saw Dr. Zachariah on October 3, 2012, at which time she reported chills, fatigue, and fever due to hepatitis C; nausea; hand tremors; headaches; nervousness; numbness; anxiety; and depression. (Tr. 944.) Dr. Zachariah diagnosed DeGroot with acquired hypothyroidism, post-surgical. *Id.* He continued DeGroot's thyroid medication. (Tr. 947.)

DeGroot saw Natasha Ware, M.D., at Ferguson Medical Group, on December 5, 2012, for a court-ordered medical evaluation. (Tr. 937-42.) DeGroot had been involved in a motor vehicle accident. (Tr. 937.) DeGroot complained of weakness, difficulty sleeping, joint and back pain, difficulty concentrating, tremors, anxiety, and depression. (Tr. 938-39.) Upon examination, Dr. Ware noted pronounced resting tremor in the bilateral fingers, hands, and wrists. (Tr. 939.) Dr. Ware diagnosed DeGroot with, among other things, resting tremor. (Tr. 940.) She indicated that this condition required further evaluation, as it has a "marked impact on quality of life." *Id.* DeGroot returned on January 29, 2013, at which time she continued to complain of tremors. (Tr. 922.) DeGroot reported that Dr. Stahly told her the tremors were "nothing." *Id.* Dr. Ware noted bilateral tremors in DeGroot's hands and fingers, and also diffuse muscle

movement in her forearms.  *Id.*   Dr. Ware diagnosed DeGroot with resting tremor, and referred her to a neurologist for further evaluation.   (Tr. 924-25.)

The medical evidence summarized above reveals that DeGroot received extensive treatment for her thyroid condition from December 2010 through the date of the hearing. Notably, DeGroot's thyroid treatment involved the surgical removal of her thyroid due to a multinodular goiter, hypothyroidism secondary to the thyroidectomy, and thyroid hormone replacement medication, facts the ALJ omits in her opinion.   DeGroot reported the following symptoms as a result of her thyroid condition: dysphagia, dysphonia, fatigue, fever, chills, nausea, headaches, heat and cold intolerance, and tremors.   Some of DeGroot's thyroid symptoms, such as the compression symptoms of dysphagia and dysphonia, resolved after the thyroidectomy. DeGroot, however, continued to complain of headaches, fatigue, tremors, fever, and chills following surgery.   (Tr. 952, 495, 950, 504, 948, 944.)   In sum, DeGroot's thyroid impairment resulted in extensive treatment and significant symptoms, which would likely result in more than minimal functional limitations.

Defendant argued that the ALJ considered all of DeGroot's credible symptoms in assessing her RFC.   Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process. *See Coleman v. Astrue*, No. 4:11CV2131 CDP, 2013 WL 665084, at *10 (E.D. Mo. Feb. 23, 2013).

At Step 2 of the sequential analysis here, the ALJ found DeGroot to have a number of severe impairments, including fibromyalgia, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, hepatitis C, stage II liver disease, social anxiety, and

depression.

The ALJ proceeded to Step 3 of the sequential analysis and found DeGroot's impairments not to meet or equal the criteria of one of the listed impairments. In determining DeGroot's RFC, the ALJ considered her chronic neck, back, and diffuse body pain related to her spinal impairment and fibromyalgia; and hand pain related to her bilateral carpal tunnel syndrome. (Tr. 18.) The ALJ indicated that DeGroot required an avoidance of concentrated chemicals due to her hepatitis C. *Id.* With regard to her mental impairments, the ALJ limited DeGroot to simple, routine, repetitive tasks and incidental contact with the public due to her social anxiety and difficulty concentrating. *Id.*

The Defendant contends that some of the effects of DeGroot's thyroid condition were adequately addressed by limitations the ALJ imposed due to other impairments. For example, Defendant notes that DeGroot's concentration difficulties were addressed by the ALJ's limitation to only simple, routine, repetitive work. The Defendant further suggested that the ALJ's consideration of DeGroot's carpal tunnel syndrome, which resulted in the ALJ finding DeGroot could perform frequent bilateral gross and fine manipulation addressed any limitation DeGroot may have due to her tremors. The undersigned disagrees.

The ALJ did not specifically consider the effects of DeGroot's thyroid impairment, as a non-severe impairment, when determining DeGroot's RFC. The limitations the ALJ imposed resulting from DeGroot's other severe impairments do not render the ALJ's error harmless because they do not adequately address the symptoms from her thyroid condition.

The ALJ limited DeGroot to frequent bilateral gross and fine manipulation due to her carpal tunnel syndrome. In vocational terms, "frequent" means "occurring from one-third to two-thirds of the time…" SSR 83-10, 1983 WL 31251, * 6 (1983). DeGroot has consistently

complained about hand tremors since August 2011, when she reported them to her endocrinologist, Dr. Zachariah. (Tr. 958.) She has received treatment for her tremors from Ms. Pedigo, a nurse practitioner, who indicated that the tremors could be related to DeGroot's thyroid impairment. (Tr. 496.) DeGroot has seen a neurologist, Dr. Stahly, for her hand tremors, after they did not resolve following her thyroid removal surgery. Dr. Stahly indicated that DeGroot's tremors cause difficulty with handwriting as well as involuntary movements. (Tr. 504.) On December 5, 2012, Dr. Ware noted "pronounced" tremor in DeGroot's bilateral fingers, hands, and wrists. (Tr. 939.) Dr. Ware indicated that the condition required further evaluation as it has a "marked impact on quality of life." *Id.* On January 29, 2013, DeGroot's last treatment note, Dr. Ware noted bilateral tremors in DeGroot's hands and fingers, and diffuse muscle movement in her forearms. (Tr. 922.) Dr. Ware referred DeGroot to a neurologist for further evaluation.

Although the origin of DeGroot's tremors is not entirely clear from the record, DeGroot has consistently complained of hand tremors from February 2011 through the date of the hearing. DeGroot also testified at the administrative hearing that she experienced hand tremors. (Tr. 45.) Despite this evidence of hand tremors, whether as a symptom of DeGroot's thyroid condition or another condition, the ALJ did not discuss this impairment in her opinion. Given the medical evidence discussed above, it is questionable whether DeGroot could perform bilateral gross and fine manipulation one third to two thirds of the workday or that she could perform the positions of "hand packer" or "production worker assembler" as found by the ALJ.

Further, the ALJ did not incorporate any limitations resulting from DeGroot's fatigue, fever, chills, nausea, headaches, and heat and cold intolerance. It is true that some of these symptoms could be attributable to DeGroot's other impairments. For example, on July 17, 2012,

Dr. Zachariah indicated that DeGroot attributed her fever and chills to her hepatitis C. (Tr. 948.) Regardless, the ALJ did not discuss any of these symptoms in her opinion, and they would be expected to result in work-related limitations. Where an ALJ errs in her failure to consider one of a claimant's impairments, the resulting RFC assessment is called into question inasmuch as it does not include all of the claimant's limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001).

In sum, the ALJ did not adequately consider DeGroot's thyroid condition, either at step two or later in the sequential analysis. The ALJ did not discuss the fact that DeGroot underwent extensive treatment for her thyroid condition including surgery and reported significant symptoms resulting from the condition. DeGroot's tremors were not considered either, whether as a symptom of DeGroot's thyroid condition or an independent impairment, despite extensive evidence of treatment for such. The ALJ's error was not harmless because she did not consider the effects of DeGroot's thyroid condition together with all impairments both severe and non-severe in determining her RFC. Thus, the case must be remanded so that the ALJ may conduct a thorough evaluation of the severity of DeGroot's thyroid condition at step two of the sequential analysis. Regardless of whether the ALJ finds DeGroot's thyroid condition to be severe on remand, the ALJ should include the effects of this impairment, including DeGroot's tremors, when determining DeGroot's RFC.

### IV.B. Credibility Analysis

DeGroot also argues that the ALJ erred in finding her testimony not fully credible without applying the proper credibility factors. Specifically, DeGroot contends that, under *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the ALJ was required to consider DeGroot's work history and the type, dosage, and side effects of her medications.

In evaluating a claimant's credibility, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski*, 739 F.2d at 1322. While an ALJ need not explicitly discuss each *Polaski* factor, he nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). If the ALJ's credibility determination is supported by good reasons and substantial evidence, the Court must defer to this determination. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012).

In this case, the ALJ did not discuss DeGroot's work history or the dosage or side effects of her many medications. The record reveals DeGroot has a lengthy work record with substantial earnings. (Tr. 140-53.) The ALJ did not include any discussion in her opinion of DeGroot's work record. In addition, DeGroot has been prescribed numerous pain medications during the relevant period, and has regularly visited a pain management clinic for treatment of her numerous physical impairments. (Tr. 363-437.) DeGroot has also taken psychotropic medications for her mental impairments. (Tr. 891-919.) The ALJ also omitted any discussion of DeGroot's many prescription medications, which, like DeGroot's work record, enhances her credibility.

The ALJ instead relied on the objective medical evidence and DeGroot's "wide range of reported activities" to discredit the credibility of DeGroot's subjective complaints. (Tr. 18.) The ALJ noted that the medical record revealed DeGroot's symptoms resolved after neck and carpal tunnel surgeries, and that DeGroot consistently reported stable mental health symptoms. *Id.* The ALJ cited some support in the medical record for these findings. (Tr. 17-18.) The ALJ

noted that DeGroot testified that she performed the following activities: going grocery shopping, driving a car, performing household cleaning, preparing meals, doing laundry and dishes, watching television, reading magazines, socializing with her family, and taking care of her dogs. (Tr. 17.) DeGroot testified that she leaves her home once every two to three weeks to get groceries (Tr. 36, 179); when she shops for groceries she has problems being around people, cannot breathe, and does not make eye contact (Tr. 36); she microwaves meals (Tr. 47); she takes breaks while washing dishes (Tr. 47-48); her friends come over to help her clean occasionally (Tr. 47); a friend mows her yard (Tr. 48); her mother comes to her home to visit her (50); and she has two dogs that she feeds but does not take on walks (Tr. 50)—she indicated that she is no longer able to train, exercise, and groom her dogs as she had in the past (Tr. 177). The factors cited by the ALJ are not "good reasons" for discrediting DeGroot's subjective complaints of pain and limitations. The ALJ failed to discuss the relevant factors of DeGroot's work history and medications, and her summary of the objective medical evidence was incomplete, as it did not adequately consider DeGroot's thyroid condition.

As a result of the foregoing, this matter will be reversed and remanded to the Commissioner so the ALJ may properly evaluate DeGroot's thyroid condition. Upon remand, the ALJ will perform a new credibility analysis according to the requirements of *Polaski*. In doing so, the ALJ should consider all of the *Polaski* factors, including DeGroot's work history and the dosage, effectiveness and side effects of her numerous prescription medications.

## V. Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon

remand, the ALJ shall properly consider DeGroot's thyroid disorder, including DeGroot's tremors, at step two; re-evaluate the credibility of DeGroot's subjective complaints under the requirements of *Polaski*, including consideration of DeGroot's work history and prescription medications; and, reassess DeGroot's RFC.   If necessary, the ALJ shall obtain additional medical evidence addressing DeGroot's ability to work.

Therefore, for the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2015.